UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

| | |
|---|---|
| LEONARD DAY, | CIVIL NO. 2:14–CV–75–KKC–HAI |
| Petitioner, | |
| V. | OPINION AND ORDER |
| GARY BECKSTROM, Warden | |
| Respondent. | |

*** *** ***

This matter is before the Court on Petitioner Leonard Day's 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus. [DE 1]. Pursuant to local practice and 28 U.S.C. § 636(b)(1)(B), this matter was referred to Magistrate Judge Ingram for a Recommended Disposition. [DE 15]. Petitioner filed his objections to the Recommended Disposition [DE 18], and Respondent filed a response to those objections. [DE 21]. For the reasons stated herein, the Court will adopt the Magistrate Judge's Recommended Disposition denying the Petition and recommending that no Certificate of Appealability should issue.

I. BACKGROUND

In September of 2003, Petitioner was convicted by a jury of complicity to murder, tampering with physical evidence, and being a first-degree persistent felony offender. [DE 1 at 1.] Petitioner was sentenced to a term of fifty years imprisonment and is currently serving that sentence. [DE 1 at 1.] The Kentucky Supreme Court described the facts leading to Petitioner's conviction as follows:

Appellant's conviction arose from charges brought against him for the murder of his former girlfriend, Tina Rae Stevens, whose skeletal remains were found in Boone County on April 10, 2000. Stevens, who had been living in Covington, Kentucky, disappeared in May 1999. At the time, she lived with Thomas Jansen, with whom she was engaged in a tumultuous, on-again-off-again relationship. She had been involved with Appellant before Jansen.

Appellant worked for Robert Walker installing fiber optic cable. In May 1999, Appellant and Walker were doing a job in Boone County. They were staying at a local motel. Walker had his wife with him, and Appellant had his then girlfriend, Deborah Hueitt, with him.

Sometime during this stay in Boone County, Walker ran into Stevens while playing pool at a bar. She asked Walker to take her to the motel where he and Appellant were staying. Walker, who claimed to have heard Appellant express his continuing love for Stevens but also to have heard Hueitt say she wanted to kill Stevens, called Appellant from the bar to see if he would like to see Stevens. Appellant said that he would, so Walker drove her to the motel. Appellant met Stevens and Walker in front of the motel. They went to Walker's room (number 124), where Appellant introduced Stevens to Walker's wife. Appellant and Stevens then went to room 135 in order to avoid Hueitt, who was sharing room 121 with Appellant.

Very early the next morning, Hueitt called Walker's room demanding to know where Appellant was. Walker denied any knowledge of his whereabouts. About thirty minutes later, Hueitt showed up at Walker's door. Walker described her as "drunk and irate," and claimed she said, "I know he's got a girl around here with him." Walker again denied any knowledge and closed the door in Hueitt's face. He then called Appellant in room 135 to tell him that Hueitt was hunting for him.

The next weekend, Appellant called Walker, who had returned to his home in North Carolina, to tell him that he and Hueitt had gotten into a fight and had been kicked out of the motel. Walker returned to Kentucky later in the week. When he picked Appellant up at his new motel, Appellant told him, "I don't know what I'm going to do. She's ruined me for life." Walker and Appellant continued to work in Boone County for approximately one month.

In April 2000, a jail work crew found most of the skeletal remains of a human body in a remote area of Boone County in a garment bag. Dr. Emily Craig, the state's forensic anthropologist, found bones and teeth scattered along the incline where the garment bag was found. Several bones, including the skull and some from the neck, legs, and hands, were missing. The garment bag appeared to have been ripped open by animals, and Dr. Craig testified at trial that teeth

marks on the bones led her to conclude that animals were probably the cause of most of the scattering of the remains. Dr. Craig also testified that the estimated time of death was 3 to 10 months before the remains were found, but that it could have been earlier—it was very difficult to tell given the varying condition of the remains inside and outside of the garment bag.

Michelle Martin, Stevens's daughter, had been trying to report her mother as missing since early 2000, but the police refused to take the report. She persisted in trying to report her mother missing, and when the remains were found in April 2000, she finally convinced the police to take the missing person report. This eventually led to the identification of the remains as those of Tina Stevens on June 5, 2000.

The investigation into Stevens's death was led by Detective Todd Kenner of the Boone County Sheriff's office. He initially suspected Thomas Jansen, Stevens's on-again-off-again boyfriend at the time of her disappearance. Detective Kenner followed several leads on Jansen, but he never found enough evidence to charge him.

In September 2000, Detective Kenner contacted Appellant, who was then working a cable job in North Carolina. Appellant told Detective Kenner about meeting with Stevens in May 1999. He claimed that his girlfriend Hueitt was upset the next day, so they went to a breakfast buffet, and that on the way to the buffet he saw Stevens, for the last time, boarding a bus. When Kenner contacted Appellant again in November 2000, he told the same story. Hueitt told Kenner a similar story about seeing a woman she thought to be Stevens at a bus stop.

In 2002, Appellant came forward and claimed that his girlfriend Hueitt had admitted to killing Stevens and that he had seen her in some of Stevens's clothes. Appellant was incarcerated in Illinois at the time. Further investigation turned up many incriminating statements and admissions made by Hueitt to several witnesses. She was arrested for the murder on April 24, 2002 in North Carolina. Appellant was arrested on July 9, 2002 on the charge of tampering with physical evidence. His arrest was based on statements from several of his friends, associates, and cellmates. On July 16, 2002, he was also charged with murdering Stevens.

Appellant's case went to trial fourteen months later following several delays due to the illness of Detective Kenner, who was to be a lead witness for the Commonwealth. The Commonwealth presented the testimony of over eighteen witnesses, many of whom described Hueitt's jealousy and her numerous incriminating statements. Hueitt invoked her Fifth Amendment rights and was therefore unavailable to testify at trial.

Several former cellmates of Appellant testified that he admitted to having a role in the killing and that he described

3

>the event in detail. One cellmate said that Appellant claimed Hueitt found him and Stevens together, confronted them, and attacked Stevens, hitting her in the head several times and cutting her throat with a knife. Stevens fell down and Hueitt continued arguing with Appellant. Stevens was bleeding but still alive at this point, but Appellant claimed that she had suffered a fatal wound. He then "finished" the job "out of compassion" by stabbing Stevens in the back of skull with the knife. They then cut Stevens's head and fingers off, put the body in a clothes bag, and dumped it by the river. Another cellmate said that Appellant claimed Hueitt did everything. A third cellmate overheard Appellant say, "She didn't do it right and I had to finish her off," and that no one would care about the victim because she was a prostitute.
>
>Pamela Hendrix, a friend of Appellant, testified to statements Appellant made regarding the murder prior to and during a trip to purchase drugs, including the fact that he and Hueitt had discarded Stevens's body in a blue garment bag and that he had seen Hueitt cut off Stevens's head.

[DE 9-6 at 2-3.] Petitioner appealed his conviction directly to the Supreme Court of Kentucky as permitted under §110(2)(b) of the Kentucky Constitution. [DE 9-6 at 3.] He raised three issues in his appeal: "(1) that he was denied the right to a speedy trial; (2) that the trial court improperly admitted a series of pictures of the decaying skeletal remains; and (3) the trial court improperly admitted highly prejudicial evidence of other crimes, wrongs, and bad acts." [DE 9-6 at 2.] The Supreme Court of Kentucky unanimously affirmed Petitioner's conviction. [DE 9-6 at 2.]

After exhausting his direct appeal, Petitioner filed *pro se* motions to vacate his convictions pursuant to Kentucky Rule of Criminal Procedure 11.42 and Kentucky Rule of Civil Procedure 60.02 in the Boone County Circuit Court. [DE 1 at 2.] Petitioner asserted that he was entitled to relief based on defense counsel's failure to call Thomas Jansen ("Jansen") as a witness, defense counsel's failure to call Leslie Parrett ("Parrett") as a witness, and a third ground for relief that is not presently at issue. [DE 9-7 at 36.] The Boone Circuit Court appointed the Department of Public Advocacy to represent Petitioner and conducted an evidentiary hearing in which Bryan Burlew, Petitioner's trial counsel

4

("trial counsel" or "Burlew"), was the sole witness. [DE 9-7 at 35-36.] The Boone Circuit Court denied Petitioner's motions, finding that "counsel made certain decisions regarding trial strategy, in concert with his client," and that it could not say that those strategic decisions were unreasonable. [DE 9-7 at 39.]

On August 3, 2012, the Court of Appeals of Kentucky affirmed the Boone Circuit Court's denial of Petitioner's motions. The Court of Appeals affirmed the Boone Circuit Court's ruling, holding that trial counsel's decision not to call Jansen or Parrett was the result of reasonable trial strategy. The Supreme Court of Kentucky thereafter denied discretionary review. [DE 1 at 3.]

Finally, on April 11, 2014, Petitioner filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [DE 1.] The Magistrate Judge issued his Recommended Disposition on June 17, 2015, recommending that the Petition for a Writ of Habeas Corpus be denied. [DE 15.]

## II. ANALYSIS

In his objections, Petitioner argues that the Magistrate Judge applied an incorrect standard of review. [DE 18 at 17-19.] He also argues that the Court of Appeals of Kentucky erred in applying *Strickland* to his ineffective assistance of counsel claim and made unreasonable factual findings regarding Jansen and Parrett, who Petitioner argues should have been called as witnesses during his trial. [DE 18 at 9-17, 19-26.]

### A. Standard of Review

First, Petitioner asserts that *Harrington v. Richter,* 562 U.S. 86 (2011), does not apply to this case and that, even if it is applicable, it does not require the "doubly" deferential standard applied by the Magistrate Judge. Petitioner is wrong on both counts.

*Harrington* applies here because the Petitioner filed a §2254 petition challenging a state court's rejection of an ineffective assistance of counsel claim. Petitioner claims that

5

*Harrington* applies only to "summary dispositions" by state courts. [DE 18 at 17.] *Harrington* did involve a "one-sentence summary order" issued by a state court, 562 U.S. at 86-87, but that fact does not mean that *Harrington* is inapplicable to the present case. In its discussion, the Supreme Court stated: "Under § 2254(d), a habeas court must determine what arguments or theories supported *or, as here, could have supported,* the state court's decision …." *Id*. at 102 (emphasis added) (citations omitted). This statement indicates that *Harrington* is not limited to cases involving summary dispositions because the Supreme Court clearly contemplated other non-summary decisions in its analysis. Furthermore, it makes no sense to apply a more deferential standard to a state court's summary disposition that contains no explanation than to a state court decision that articulates a rationale. Therefore, *Harrington* applies to this case.

Next, Petitioner argues that the "double deference" standard established in *Harrington* is not required here. [DE 18 at 18.] Again, Petitioner's argument on this point is meritless. There is no dispute that *Strickland v. Washington*, 466 U.S. 668 (1984), properly governed the Court of Appeals of Kentucky's analysis of Petitioner's ineffective assistance claim, and Petitioner filed his Petition under 28 U.S.C. § 2254. In assessing the claim of ineffective assistance of counsel in *Harrington* under 28 U.S.C. § 2254, the Supreme Court emphasized that "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential … and when the two apply in tandem, review is doubly so." *Id*. at 105 (citations omitted). Since the present case involves a challenge to a state court's application of *Strickland* brought under § 2254, the double deference standard applies. Thus, the Magistrate Judge properly applied the standard of review articulated in *Harrington*.

Under the *Harrington* standard, "the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking

6

whether defense counsel's performance fell below *Strickland*'s standard." 562 U.S. at 101. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105. The Supreme Court emphasized that "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

In turn, *Strickland* requires the party asserting ineffective assistance of counsel to show both deficient performance and prejudice. 466 U.S. at 687. The Supreme Court cautioned that "judicial scrutiny of counsel's performance must be highly deferential" and include a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in order to "eliminate the distorting effects of hindsight." *Id.* at 689. Indeed, the Court warned that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citations and internal quotations omitted).

The Court of Appeals of Kentucky evaluated Petitioner's claim under the *Strickland* standard and held that he did not receive ineffective assistance of counsel. Thus, the essential question presented to this Court under § 2254 is whether there is a "reasonable argument" that Petitioner's counsel satisfied *Strickland*. *Harrington,* 562 U.S. at 105. If a reasonable argument exists, then the Court of Appeals' decision must be upheld.

7

**B.      Failure to Secure Thomas Jansen as a witness at trial**

There is a reasonable argument that trial counsel satisfied *Strickland* with respect to Jansen.

Before the Court of Appeals of Kentucky, Petitioner argued that his trial counsel provided ineffective assistance by failing to secure Jansen's presence at trial or to otherwise ensure the introduction of his statements. [DE 1 at 21.] He asserts that the defense was going to present Jansen to the jury as an "alternate perpetrator" and his trial counsel should have introduced evidence that Jansen and Stevens were in a "tumultuous relationship" along with several other facts and statements that implicated Jansen in the murder. [DE 1 at 20-21.] Prior to trial, the defense failed to successfully subpoena Jansen and the trial court ruled that Jansen was not an unavailable witness because he had recently appeared in a family court proceeding, so his statements were not admissible as hearsay under the Kentucky Rules of Evidence. [DE 1 at 21.]   During trial, Petitioner's counsel did not subpoena Jansen or request a continuance to do so. [DE 1 at 21.]

The Court of Appeals concluded that "trial counsel's decision not to subpoena Jansen or to request a continuance to subpoena him was reasonable trial strategy."  [DE 9-10 at *3.] In the present case, Petitioner makes two main arguments: (1) that the Court of Appeals' decision was based on an unreasonable determination of the facts, and (2) that the Court of Appeals' decision was an unreasonable application of *Strickland*. [DE 18 at 9.] Accordingly, he objects to the Magistrate Judge's finding that "there is a reasonable argument that counsel satisfied *Strickland's* deferential standard" with regard to Jansen. [DE 15 at 13.]

First, Petitioner argues that the Court of Appeals of Kentucky's underlying factual determination that trial counsel intentionally ceased efforts to locate Jansen was unreasonable. The Court of Appeals found that "it is clear from the record that counsel did,

8

in fact, make attempts to locate [Jansen], but intentionally ceased those efforts." [DE 9-10 at *3.] It held that "[i]n light of Jansen's potential – and likely – testimony, it is reasonable to assume trial counsel terminated his efforts at locating Jansen for a strategic reason." *Id.* The Court of Appeals explained that '[i]f trial counsel had subpoenaed Jansen, Day risked Jansen convincingly denying everything and destroying Day's defense." *Id.*

Petitioner is essentially arguing that his trial counsel did not make a strategic choice, but rather an error or omission in not securing Jansen for trial. He objects to the Magistrate Judge's finding that it was not unreasonable for the Court of Appeals to conclude that the decision not to call Jansen as a witness was a strategic decision. [DE 15 at 16-17.]

A determination of a factual issue made by a state court, such as the above determination by the Court of Appeals, is presumed to be correct. 28 U.S.C. § 2254(e)(1). The Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*; *see also Ward v. Sernes,* 334 F.3d 696, 703-04 (7th Cir. 2003) ("… § 2254(e)(1) provides a mechanism by which the petitioner can prove unreasonableness. If the petitioner can show that the state court determined the underlying factual issue against the clear and convincing weight of the evidence, the petitioner has not only established that the court committed error in reaching a decision based on that faulty premise, but has also gone a long way towards proving that it committed unreasonable error.").

Petitioner points to two pieces of evidence to support his argument that the Court of Appeals made an erroneous factual determination. First, he argues that the factual finding was unreasonable because his trial counsel was still attempting to locate Jansen on the day before trial began. [DE 18 at 12-13.] His argument is that if his trial counsel was still looking for Jansen, then the finding that he intentionally ceased efforts to locate Jansen was unreasonable. Petitioner overlooks the fact that the Court of Appeals was referring to

9

trial counsel's decision not to subpoena Jansen or request a continuance *after* trial began. [DE 9-10 at *3.] ("*During trial*, Day's trial counsel chose not to subpoena Jansen or request a continuance to do so.") (emphasis added). Therefore, trial counsel's efforts to locate Jansen before trial began have no bearing on the Court of Appeals' finding that trial counsel later discontinued seeking Jansen during trial.

Second, Petitioner points to his trial counsel's testimony at the state post-conviction evidentiary hearing. [DE 18 at 13-15.] Petitioner argues that his trial counsel "denied having a strategic reason for not calling Jansen as a witness at trial," which makes the Court of Appeals' factual finding unreasonable. [DE 18 at 13.] The Magistrate Judge found that "Petitioner overstates Burlew's testimony" because "Burlew's complete testimony shows that, instead of definitively explaining why he did not call Jansen or seek a continuance, he equivocated." [DE 15 at 16.] The Magistrate Judge correctly observed that trial counsel equivocated during his testimony:

> First, Burlew was asked why he did not move for a continuance so as to subpoena Jansen, and he stated "I couldn't tell you[.]" He then stated "it **probably,** it just didn't occur to me." Then, when asked "it wasn't some type of strategy that you used, it's something that you may have overlooked?" Burlew responded "possibly." Additionally, on re-direct, he testified he could not say why it did not occur to him and was "**perhaps** an oversight on my part."

[DE 15 at 16-17] (emphasis in original) (citations omitted).

"Burlew's equivocation," according to the Magistrate Judge, "means Petitioner overstates that the failure to seek a continuance was necessarily *not* a strategic decision," which "means there was no unreasonable determination of fact … because [the Court of Appeals'] finding was not against the clear and convincing weight of the evidence." [DE 15 at 17]. This Court agrees with the Magistrate Judge's conclusion, especially given that "[u]nder *Strickland*, courts give little weight to counsel's hindsight assessment of [his] trial

10

actions." *O'Neal v. Burt*, 582 F. App'x 566, 573 (6th Cir. 2014). Moreover, "[w]hen counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). Thus, the fact that Jansen was not called is presumed to have been the result of tactical reasons rather than "sheer neglect." *Id.*

The Court of Appeals based its factual finding on the potentially damaging nature of Jansen's testimony. It is indeed reasonable to assume, as the Court of Appeals did, that trial counsel intentionally ceased searching for Jansen because calling him risked more harm than good to the defense. That factual finding is not rendered unreasonable due to trial counsel's testimony in which he could not state with certainty that his failure to secure Jansen as a witness was not a strategic decision. Trial counsel's testimony, which is given little weight to begin with, left open the possibility that not calling Jansen was a strategic decision, so the Court of Appeals' finding was not against the clear and convincing weight of the evidence. Thus, the Court of Appeals' underlying factual determination that Petitioner's trial counsel intentionally ceased efforts to locate Jansen was not unreasonable.

Next, Petitioner argues that the Court of Appeals unreasonably applied *Strickland* when it concluded that his trial counsel's decision not to call Jansen was a reasonable strategy. The Magistrate Judge determined that "it was not unreasonable for the Court of Appeals to conclude that counsel's decisions not to subpoena Jansen or seek a continuance were reasonable trial strategy." [DE 15 at 13.] In his objections, Petitioner argues that "[i]t simply was not objectively reasonable for Burlew not to attempt to secure Jansen as a witness at trial" because "counsel had no strategic reason not to call Jansen." [DE 18 at 16.] He asserts that he "would have had nothing to lose by calling Jansen to the stand." *Id.*[1]

---

1 Petitioner also objects to the Magistrate Judge's statement that "[f]rom the perspective of trial counsel, when the trial court refused to find Jansen was an unavailable witness, there was no way to

11

Contrary to Petitioner's argument, the Court of Appeals articulated a valid strategic reason for not calling Jansen. Given the risk that Jansen might convincingly deny any wrongdoing and undermine Day's defense, "by choosing not to subpoena Jansen, Day was able to allude to Jansen's guilt but avoid the risk." [DE 9-10 at *3.] The Court of Appeals found that trial counsel's performance was not deficient because he was carrying out this reasonable trial strategy. Thus, the Court of Appeals stated a reasonable argument that Petitioner's trial counsel satisfied *Strickland*, meaning that Petitioner's claim of ineffective assistance regarding Jansen must be denied.

**C.     Failure to Secure Leslie Parrett as a witness at trial**

There is also a reasonable argument that trial counsel satisfied *Strickland* by not calling Parrett.

Petitioner argues that his trial counsel was ineffective because he failed to call Parrett even though she was present and available during trial. [DE 1 at 26-28.] Petitioner asserts that Parrett was "Steven's best friend who saw Stevens alive in both August and September of 1999, some four months after the Commonwealth claimed Day participated in her murder" and that she "was sure of the dates on which she saw Stevens in August and September because Parrett had just started a new job." [DE 1 at 26.]

The Court of Appeals also rejected this claim, finding that counsel's decision not to call Parrett "was born out of a careful investigation and strategic weighing of her anticipated testimony, [trial counsel's] judgment of her demeanor, and credibility." [DE 9-10 at *4.] The Court of Appeals concluded that "[a]lthough calling Parrett to testify might also

---

know with any degree of certainty how Jansen would testify if called as a witness." [DE 15 at 13.] Petitioner asserts that trial counsel never testified to this fact and that it is an additional fact that the Magistrate Judge improperly assumed. [DE 18 at 15.] Petitioner's characterization is an exaggeration. The Magistrate Judge's statement was merely another way of stating the Court of Appeals' opinion that Jansen might testify in a manner that hurt Petitioner's defense. Regardless, even if this lone statement was found to be improper and thrown out, it would not affect this Court's adoption of the Magistrate Judge's ultimate conclusion.

12

have been reasonable, we agree that counsel's strategic decision not to call her as a witness did not constitute ineffective assistance of counsel". [DE 9-10 at *4.] The Magistrate Judge concluded that Petitioner's challenges to the Court of Appeals findings regarding Parrett were meritless. [DE 15 at 20.]

Petitioner makes two main arguments regarding Parrett: (1) the decision not to call Parrett was objectively unreasonable, so the Court of Appeals application of *Strickland* was unreasonable, and (2) trial counsel promised the jury they would hear from Parrett, so the failure to actually call her constituted ineffective assistance. [DE 18 at 19-25.][2]

Relevant to Petitioner's first argument, the Court of Appeals stated:

> During the evidentiary hearing, trial counsel testified he was concerned Parrett might be easily discredited during cross-examination, given that she claimed to remember the exact date she last saw Stevens, which was four years prior to trial. He reasoned it would be more beneficial to call no witnesses than to present an unreliable witness. Trial counsel claimed he and Day agreed to focus on attacking the Commonwealth's proof.

[DE 9-10 at *4.] Trial counsel did indeed testify to his concerns about using Parrett as a witness during the state post-conviction evidentiary hearing:

> Q: From your discussions with Mrs. Parrett, did you think she was a good witness, that she'd make a great witness … I mean …?
>
> Trial Counsel: I thought she was an adequate witness, yeah. I don't think she would have presented poorly. No, sir. That

---

2 In his objections, Petitioner also states that "no deference is owed to unreasonable factual findings" regarding Parrett, which suggests that he may be contesting a factual determination by the Court of Appeals as to Parrett. [DE 18 at 21.] To the extent that Petitioner intended to argue that the Court of Appeals made an unreasonable factual determination in finding that not calling Parrett was a strategic decision, this Court disagrees. There is no doubt that trial counsel made a decision to not call Parrett as opposed to an omission or oversight, evidenced most notably by trial counsel's own reference to his not calling Parrett as a decision during his testimony at the state post-conviction evidentiary hearing. Trial counsel stated, "That wasn't where I was headed when I *decided* not to call her." [DE 18 at 22.](emphasis added). Petitioner himself even states that "Burlew testified that he *chose* not to call Parrett as witness [sic]…." [DE 18 at 23.](emphasis added). Thus, the Court of Appeals did not make an unreasonable factual determination in finding that not calling Parrett was in fact a conscious choice.

>wasn't where I was headed when I decided not to call her. I think she would have been perfectly adequate, however, there was the unknown question about how well she would've held up under cross examination and the secondary issue as I've already talked about of did it make more sense of putting up just one witness which would appear weak or … appear strong which is what I felt like we needed to do, and just present to the jury that the Commonwealth had not proven their case.
>
>Q: So when you say how well she would have held up on cross examination obviously you had basic concerns about just how good a witness she would actually be, how favorable …?
>
>Trial Counsel: I think Lesley Parrett would have been a fine witness. My concern was there was four years intervening from the time she alleged to have seen Tina Stevens. Memories are faulty. Things that seem cut and dry and that are locked into your memory because of the event … You have a murder and now suddenly everything that was four years old comes back into your memory with crystal clear clarity or so it seems. As any trial lawyer knows, that's not always the case.

[DE 18 at 22-23.] The Magistrate Judge concluded that "Because Petitioner acknowledges that trial counsel has a concern about the passage of time and its effect upon Parrett's reliability, which concern formulated the basis of the Court of Appeals' determination that counsel made a strategic decision, Petitioner has not established that this determination by the Court of Appeals was unreasonable." [DE 15 at 21.]

There is a reasonable argument that Petitioner's trial counsel satisfied *Strickland* when he chose not to call Parrett. As trial counsel's testimony indicates, he was concerned about the four year passage of time. He also stated he was concerned about appearing weak by calling only a single witness, and thought it would be better to argue to the jury that the Commonwealth had failed to prove its case. Trial counsel made the strategic decision not to call Parrett based on these legitimate concerns, so there is at least a reasonable argument that his performance was not deficient. Therefore, the Court of Appeals' application of *Strickland* was not unreasonable.

Next, Petitioner argues that trial counsel provided ineffective assistance because he told the jury that it would hear Parrett's testimony, then failed to deliver on that promise. [DE 18 at 24-25.] Petitioner specifically asserts that neither the Court of Appeals nor the Magistrate Judge addressed this argument. [DE 18 at 24.]

It must first be noted that while Petitioner claims that his trial counsel made this promise to the jury, he provides no citation in support of his assertion. *See* [DE 18 at 24-25.] This is important because Petitioner also previously claimed that his trial counsel promised the jurors that they would hear from Jansen, but the Magistrate Judge refuted that claim. [DE 15 at 14, n. 3.] ("There was no such promise. Indeed, trial counsel stated that Jansen would "probably not testify," …). Therefore, this Court views Petitioner's claim that his trial counsel promised the jury that Parrett would testify with skepticism.

Even accepting that trial counsel did tell the jury that it would hear from Parrett, counsel's failure to actually call Parrett did not amount to ineffective assistance of counsel. Petitioner cites *U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003), for the proposition that "little is more damaging than to fail to produce important evidence that has been promised in an opening." *Id.* at 257 (citing *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir. 1988)).

However, in the same case the Seventh Circuit also noted that "[a]bandoning the promise may be necessary when things do not pan out as the attorney reasonably expected or the detriments of the promised evidence become clear only later." *Id.* at 259. In footnote 18, the *Leibach* Court observed that "[t]he record is silent as to [the trial attorney]'s reasons, if any, for abandoning the promise to present evidence that [the petitioner] was not affiliated with a gang." *Id.* at 259 n.18.

In the present case, the record contains a reasonable explanation for why trial counsel did not present Parrett's testimony despite any prior statements to the jury. As the

15

trial progressed, trial counsel felt as if the Commonwealth had failed to prove its case: "In fact at – by the conclusion of the Commonwealth's case in chief, as I have testified, I felt like we had it won. I didn't feel like the Commonwealth had proved its case." [DE 15 at 15.] Trial counsel feared that calling only a single witness, Parrett, would make the defense's case appear weak and believed the better strategy was to "present to the jury that the Commonwealth had not proven their case." [DE 18 at 22-23.]  This is a plausible reason for not ultimately calling Parrett, especially when coupled with trial counsel's concerns about Parrett's credibility due to the four years that had passed. Thus, the present case is distinguished from *Leibach*. Trial counsel's decision not to call Parrett despite any prior statements to the jury did not render his performance deficient.

Lastly, the *Leibach* Court, which found that trial counsel's abandonment of a promise to the jury in that case was not legitimate trial strategy, stated that the "breach of promises he made in the opening statement was not so prejudicial that it would support relief in and of itself …" 347 F.3d at 260. Likewise in the present case, even if trial counsel's decision to break with his earlier statements to the jury and not call Parrett was not a reasonable trial strategy, it alone would not render trial counsel's performance deficient. Since this Court has found that the Court of Appeals' application of *Strickland* was not unreasonable in the other respects asserted by Petitioner, his claim could not succeed on this argument alone.

For these reasons, Petitioner cannot show that the Court of Appeals unreasonably applied *Strickland* to trial counsel's decision not to call Parrett.

D.   **Certificate of Appealability**

In order for this Court to issue a Certificate of Appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, a "petitioner must demonstrate that reasonable jurists would find the

16

district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner objects to the Magistrate Judge's determination that no Certificate of Appealability should issue, arguing that reasonable jurists might disagree with the aforementioned findings of this Court. [DE 18 at 26-28.]

Reasonable jurists could not disagree that this Court properly applied the highly deferential *Harrington* standard to the facts of this case. There are reasonable arguments that trial counsel satisfied *Strickland* despite not calling Jansen or Parrett. Jurists could not disagree that these reasonable arguments exist, so they could not find that the conclusion that the Court of Appeals of Kentucky did not unreasonably apply *Strickland* is debatable or wrong. Therefore, no Certificate of Appealability should issue.

### III. CONCLUSION

Having reviewed the Recommended Disposition along with the objections filed by Petitioner and finding no error, this Court adopts the Magistrate Judge's recommendations. Accordingly, **IT IS ORDERED** as follows:

1. The Magistrate Judge's Recommended Disposition [DE 15] is **ADOPTED** as the Court's opinion; and

2. Defendant's objections to the Magistrate Judge's Recommended Disposition [DE 18] are **OVERRULED**.

Dated April 5, 2016.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY